JAMES C. SKAKEL AND SAMUEL CAFASSO, PLAINTIFFS-RESPONDENTS, v. TOWNSHIP OF NORTH BERGEN IN THE COUNTY OF HUDSON, A MUNICIPAL CORPORATION OF NEW JERSEY, *ET AL.*, DEFENDANTS-APPELLANTS.

GEORGE BUILDING CO., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF NORTH BERGEN IN THE COUNTY OF HUDSON, A MUNICIPAL CORPORATION OF NEW JERSEY, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued March 4, 1962—Decided May 21, 1962.

370

---

Mr. *Philip Lindeman, II,* argued the cause for the defendant-appellant, Singer City On the Hudson, Inc. (*Messrs. Hellring, Lindeman & Lieberman,* attorneys).

*Mr. Leon S. Milmed* argued the cause for the plaintiffs-respondents, James C. Skakel and Samuel Cafasso (*Messrs. Milmed & Feder*, attorneys; *Mr. Lewis Stein*, on the brief).

No appearance for the defendant-appellant, Township of North Bergen, a municipal corporation of New Jersey.

No appearance for the plaintiff-respondent, George Building Co., a New Jersey corporation.

The opinion of the court was delivered by

PROCTOR, J. The defendants Township of North Bergen and Singer City On the Hudson, Inc. (Singer) appealed from a summary judgment entered by the Superior Court, Law Division, in favor of the plaintiffs Skakel and Cafasso, and plaintiff George Building Co. (George) in their consolidated actions in lieu of prerogative writ. This judgment set aside resolutions of the Board of Commissioners of the township, adopted purportedly in pursuance of *N. J. S. A.* 40:60–26(c), confirming the sale to Singer of municipal lands. While the appeal was pending in the Appellate Division we certified the cause. Prior to oral argument we were notified by the township that it withdrew its appeal. Since George has not filed a brief on this appeal, the only parties who remain are plaintiffs Skakel and Cafasso, and defendant Singer.

The essential facts giving rise to the summary judgment are not in dispute. On March 15, 1961, Singer submitted a detailed proposal to the township offering to purchase for $100,000 certain township-owned lands not needed for public use and to build thereon an apartment development with adjunct facilities; the ultimate improvement to be a "city within a city" and to have a total value of at least $20,000,000. The offer, which was extensive and detailed, set forth a time schedule for completion of certain phases of the project. It provided, among other things, that physical data and financial arrangements on the proposed

project be substantially completed and the construction of at least 350 apartment units be commenced within two years, and that the entire project be completed within seven years. The offer further provided that in the event the offeror failed to complete at least $20,000,000 of improvements within seven years, the township could demand a reconveyance of that part of the tract upon which construction had not begun or a mortgage loan placed. The undertakings were not to be deemed violated if any failure to meet the stipulated schedule was due to certain enumerated causes. At a meeting held the same day (March 15, 1961), the Board of Commissioners of the Township, acting pursuant to *N. J. S. A.* 40:60–26(c), accepted the offer subject to final approval at a meeting to be held March 29, 1961. The portions of *N. J. S. A.* 40:60–26 which govern the township's action provide:

"The governing body of any municipality may sell any lands or buildings or any right or interest therein not needed for public use. All such sales or disposition except as provided in sections 40:60–27 to 40:60–29 [not here applicable] of this Title shall be authorized to be made by 1 of the following methods:

*　　　*　　　*

(c) In place of the above methods the governing body of any municipality may sell any such properties at private sale, as follows: Upon any offer being made by any person to the municipality to purchase any such property, the said offer shall be submitted to and considered by the governing body thereof at a regular or special meeting, and said governing body may then reject said offer, or may approve the same subject to final approval at a further public meeting of said governing body not less than 10 days after said first meeting. Notice of the said further meeting of the governing body, containing said offer of purchase with a description of the land to be sold, the price thereof and terms and conditions of said sale, shall be published at least once in a newspaper circulated in said municipality, not less than 2 days nor more than 10 days before said further meeting; and at said further meeting the said offer to purchase said property shall be considered by the governing body, which may then reject the same, or may confirm and ratify said sale under said terms and conditions, or a modification thereof; provided, that no higher price or better terms shall then be bid for said property by any other person, in which case the sale is to be made to the highest bidder; and said governing body may then authorize the proper officers thereof either to execute a formal agreement of sale

with the purchaser which shall be binding upon said municipality and upon the purchaser, or may authorize the proper officers to make a deed of conveyance to said purchaser, as the case may require.

*      *      *

All sales, either public or private, may be for cash or upon credit. The governing body may by resolution fix the time for settlement and payment of the consideration and when the sales are upon credit the municipality may accept a purchase money mortgage to be given by the purchaser or purchasers, the terms and conditions of which mortgage shall be fixed by the resolution of the governing body of the municipality; provided, however, that any such mortgage shall be fully payable within 5 years from the date of the sale and shall bear interest at a rate not less than 5% per annum. The governing body may also impose any restrictions on the use to be made of such land and any conditions of sale as to buildings or structures to be erected thereon, or as to the type, size, or other specifications of such buildings or structures, or as to demolition, repair, or reconstruction of buildings or structures, and the time within which such conditions shall commence or be concluded, or any other conditions of sale in the manner and to the same extent as any other vendor of real estate, whether such sale shall be made at public or private sale; provided, however, that any conditions for the payment of the consideration upon credit and the restrictions on the use to be made of the land and the conditions of sale shall be set forth at length in any advertisement of sale hereinabove required. In all sales made pursuant to paragraphs (a), (c) or (d) of this section, the governing body of any municipality may pay a commission to any real estate broker or other person other than the purchaser actually consummating such sale, but said commissions shall not be more than 5% of the sale price."

In compliance with the statutory provisions the township, on March 24, published in the *Hudson Dispatch,* a newspaper with local circulation, the offer in its entirety together with notice of the meeting to be held on March 29.

The March 29 meeting of the Board of Commissioners was opened at 11 A. M. Present, in addition to township officials and prospective bidders, was at least one taxpayer, Loccoruba, who expressed his opinion as to the insufficiency of the offered price. Shortly after the meeting opened, Singer presented to the Board three typewritten pages of amendments "in full substitution for the last three pages of said offer heretofore submitted." The clerk then read aloud the original offer together with the amendments.

The effect of the amendments was: (1) To extend from two years to two and one-half years the period in which the offeror was bound to complete the "physical data and financial arrangements" concerning the project and to "commence construction of at least 350 apartment units"; (2) to extend from seven years to nine years the time period allowed the offeror to complete at least $20,000,000 worth of improvements; (3) to add to the list of causes absolving the offeror from liability for failure to meet time schedules any "delays in obtaining satisfactory financing through any Federal governmental agency"; and (4) to extend from seven years to nine years the period in which the township was bound to permit Singer to complete $20,000,000 of improvements before a failure on Singer's part would give the township the right to demand reconveyance of that part of the tract upon which construction had not begun or a mortgage loan placed. The amendments did not alter Singer's bid price on the land. Skakel and George, wishing to compete in the bidding, requested the Board adjourn the meeting for two weeks to permit them and any other prospective bidders the opportunity to review the amendments. The Board denied the requests. Thereupon, Skakel submitted an "informal offer" to purchase the land for $130,000 and to erect thereon an apartment development with supporting facilities. His offer was expressly made informal "because there had been no opportunity to consider the offer as modified by a statement made in behalf of Singer." George prepared a written offer to purchase the property "as advertised in the Hudson Dispatch on March 24, 1961, together with the proposed amendments as read by the City Clerk today on behalf of Singer City Corp." for $140,000 plus brokerage, and submitted the offer together with a certified check for $14,000 to the Board. Then, at 1 P. M. the Board recessed for lunch. After it reconvened at 3 P. M., the Board adopted a final resolution confirming the sale to Singer on the terms of its offer as amended. In its resolution the Board, after

noting that Singer's offer had been properly advertised, found: The "offeror modified its offer by enlarging" the time periods which the offeror had to commence and complete construction; George's bid was "without any undertakings or conditions whatsoever as to the development of the property"; and that Singer's offer "contains better terms and is a higher bid than that offered by the said George Building Company." The Board did not hold any hearing to inquire further into the merits of the Skakel or George bids.

The plaintiffs Skakel and Cafasso, the latter a resident and taxpayer of the township, filed a complaint in lieu of prerogative writ against the township and Singer demanding judgment declaring the resolutions of the Board illegal and restraining the defendants from taking any steps in furtherance of the resolutions. They alleged the amendments constituted "substantial changes" of Singer's original offer and contended the action of the Board in making the sale to Singer and in denying the requests for an adjournment was in violation of *N. J. S. A.* 40:60–26(c) and "detrimental to the best interests of the citizens and taxpayers of the defendant Township." George commenced a similar action against the same defendants but, in addition to the relief sought by Skakel and Cafasso, it demanded the township be ordered to sell the lands to it as the highest bidder.

The two actions were consolidated and all plaintiffs moved for summary judgment based on the pleadings, exhibits and affidavits. In granting the motion and setting aside the Township's resolutions, Judge Artaserse held:

"[T]he amendments which were submitted on the day the award was granted were substantial; they were material. I believe that those amendments should have been advertised. And the fact that they were not advertised, I think nullifies the entire sale.

In addition to that, it is my determination that the bid made by the George Company ostensibly on its face appears to be a better bid and for a higher price and that the municipality couldn't just brush that off as it did in this case."

However, he refused to grant George's demand that the township be compelled to sell the property to it. George did not cross-appeal.

On this appeal Singer contends its offer "as modified was properly made, in accordance with the statute, and the resolution approving the sale was legal and proper in all respects." It urges that *N. J. S. A.* 40:60–26 creates a distinction between offers which originate with prospective buyers and those which originate with municipalities; the statute evinces a legislative intent that where municipalities impose restrictions in advertised bids, those restrictions may not be modified, but where unsolicited bids are made, the advertised offer may be modified prior to acceptance. It points to the provision in *N. J. S. A.* 40:60–26(c) which states that a municipality may, at its hearing on the proposed sale after the statutory advertisement, reject or "confirm and ratify said sale under said terms and conditions [as advertised], or a *modification* thereof * * *." (Emphasis added.) Therefore, Singer contends that its offer, made as it was pursuant to *N. J. S. A.* 40:60–26(c), was subject to modification. It further contends the extent of its modification was "hardly substantial" and was in keeping with the statute because it "did not tamper with the basic terms and conditions and did not deny the citizens of North Bergen or any prospective competing bidders a common standard or norm upon which competing bids might be calculated." Singer asserts its amendments did not stifle competition. It says, "Indeed the plaintiffs and any other prospective bidders had more than four hours within which to listen to the modification, study it and revise their bids in accordance therewith." It concedes that all terms and conditions of the sale must be disclosed, but urges that requirement is satisfied if modifications are "made known to all bidders *at the time of the acceptance of the bid.*" (Emphasis Singer's.) Singer also argues that neither George nor Skakel has standing to sue since "both of them presented offers even in the face of their

contention that the modification should have been published," that "one cannot take advantage of the opportunity to achieve a contract under invalid conditions and specifications and that then, when unsuccessful, seek by the prosecution of a civil action to have the award annulled."

The plaintiffs contend the trial court correctly invalidated the township's action because the township allowed Singer to substantially amend its offer *"despite the fact that its offer as amended had never been published * * *."* (Emphasis plaintiffs'.) They argue that *N. J. S. A.* 40:60–26(c) is a competitive bidding statute and the "eminently sound public policy which underlies all competitive bidding statutes is equally applicable to this statute"; that public advertisement of amendments as extensive as those presented here is necessary to promote competition and afford all prospective purchasers a fair opportunity to bid upon a common standard. They also assert they have status to maintain the present action, Cafasso as a resident and taxpayer of the township, and Skakel as a prospective bidder who was denied the right to bid by the township's refusal to adjourn the meeting so he could study the amendments.

There is no need for us to consider whether George and Skakel have standing to sue. Cafasso is a citizen and taxpayer of the township and as such he may attack the sale. *Camden Plaza Parking, Inc. v. City of Camden,* 16 *N. J.* 150, 158–59 (1954).

The Legislature has provided that an offer to purchase sought to be consummated pursuant to *N. J. S. A.* 40:60–26(c) must be advertised before the sale can ultimately be confirmed by the municipal governing body. In the same paragraph it also provided the advertised offer could be modified before final acceptance by the municipality. In our effort to accord all statutory provisions meaning and respect, we must determine what limitations, if any, the Legislature intended the advertisement require-

ment to impose upon the extent of any post-advertisement modification.

■ All agree that *N. J. S. A.* 40:60–26(c) is a competitive bidding statute. See *Escrow, Inc. v. Borough of Haworth*, 36 *N. J. Super.* 469, 472 (*App. Div.* 1955). In our view, the advertisement requirement not only furthers the competitive bidding aspect of the statute, but it serves to notify townsmen of the contemplated action of the governing body. As was said in *Belousofsky v. Board of Education of City of Linden*, 54 *N. J. Super.* 219 (*App. Div.* 1959), at *p.* 223:

> "[T]he two paramount aims of such statutes [bidding statutes] are that all bidders bid upon the same thing, and that the public know clearly what the bidder must give and the municipality receive, for a consideration plainly stated."

The modification provision appears to be inserted so that the municipality will not be absolutely welded to the offer as advertised. Although the clause requiring advertising and the clause permitting modification may initially appear to be in conflict, we think that each can serve its function within the framework of the statute.

■ The fundamental philosophy of our competitive bidding statutes is that economy be secured and extravagance, fraud and favoritism prevented. *Waszen v. City of Atlantic City*, 1 *N. J.* 272, 283 (1949). Such statutes are designed to safeguard the public good and should be rigidly enforced by the courts to promote that objective. *Township of Hillside v. Sternin*, 25 *N. J.* 317, 322 (1957). This common good is best advanced by cultivating the most extensive competition possible under the circumstances and municipalities should organize their efforts in that direction. *Asbury Park Press, Inc. v. City of Asbury Park*, 23 *N. J.* 50, 54 (1956). To give meaning to this purpose, all bidders, actual and potential, must be put on the same footing. *Case v. Trenton*, 76 *N. J. L.* 696, 699 (*E. & A.* 1909). Therefore, a municipality must "prescribe a common stand-

ard on all matters that are material to the proposals, to the end that interested persons may bid intelligently and will be induced to bid by the promise of impartiality which only specifications of that quality can give." *Greenberg v. Fornicola,* 37 *N. J.* 1, 6 (1962) ; see also *Fereday & Meyer Co., Inc. v. Elizabeth Bd. of Public Works,* 27 *N. J.* 218, 223 (1958) ; *Camden Plaza Parking, Inc. v. City of Camden, supra,* at *p.* 159.

The above principles which require prior full disclosure of the provisions of the offer ·to encourage maximum competition at a sale apply with equal force when the same disclosure is designed also to give notice to townsmen that a particular sale at a minimum price for a specific use is contemplated. As the public welfare demands that the greatest number be stimulated to compete, considerations for the local citizenry require that they also be informed of the details so that they may make their views known to the governing body.

Singer recognizes that full disclosure of a modification is essential to afford all interested parties a "full opportunity" to understand and meet the modified offer. It argues this requirement was satisfied here since the modification was made known at the meeting at which the resolution confirming the sale was adopted. We do not agree. Initial disclosure of a modification as far-reaching as the one in the present case at such a late time makes it almost impossible for competitive bidders and citizens present to digest the meaning of the modification and to effectively participate in the proceedings. But most important of all, the legislative purpose would be destroyed if the municipality through its advertisement could present one scenario of future municipal action, thus lulling citizens and potential bidders into silence, and then materially change the script in their absence.

We must still determine the latitude of "modification" as used in *N. J. S. A.* 40 :60–26 (c). Singer contends "modification" should be read in its ordinary sense

as defined in *Black's Law Dictionary* (*4th ed.* 1951), and thus permit any change so long as it "leaves the general purpose and effect of the subject matter intact." Accordingly, Singer says its modification was proper because it left intact the general purpose and effect of its original offer, *i. e.,* the purchase price and scope of the project. Although the above definition may be appropriate in another context, we believe the Legislature intended to limit the scope of the term "modification" in this statute in order to give meaning to the restrictions imposed upon the procedure to be followed, *i. e.,* advertisement of conditions of the offer and sale to the bidder offering the highest price and best terms. To give effect to the overall purpose of the statute and thereby insure the citizens the best deal possible, we think the only modification which can be made subsequent to the advertisement is one which meets both aspects of the following test: The modification must not be detrimental to the interests of the municipality and must not make the proposal more attractive to any potential bidders. If a modification does not conform to these requirements, prospective bidders would be deprived of a fair opportunity to compete and the public would be kept in the dark until it was too late to act. Such a result would clearly subvert the legislative purpose.

We find that Singer's modification fails to meet both elements of the test set forth above and therefore its offer as modified should have been treated as any other new offer under the provisions of *N. J. S. A.* 40:60–26(c). The extensions of time for commencement and completion of construction, the additional reason for excusing delays in meeting time schedules, and the diminution of the Township's right to demand a reconveyance were against the interests of the municipality. And just as Singer obviously considered the modified offer more desirable than the original offer, others, had they known of the more inviting terms, likewise might have been attracted to compete in the bidding. Therefore, we hold the township resolution

of March 29, 1961, accepting Singer's modified offer, was void.

The parties have raised a question concerning the relative worth of the George and Singer bids, and whether George's bid precludes the sale to Singer. This issue is also the basis of a contention by Singer that the trial court erred in granting summary judgment when genuine issues of fact existed. Since the trial court found the modified offer was fatally defective because it was not advertised as required by *N. J. S. A.* 40:60–26(c) and that this defect precluded the township from accepting the modified offer at its meeting on March 29, 1961, it did not have to consider the merits of the two bids. The remaining questions were all matters of law and the trial court properly entered summary judgment.

The judgment of the trial court is affirmed.

WEINTRAUB, C. J. (concurring). Although I join in the opinion of the court, I am troubled by a question, not briefed or argued, which I think should be flagged for future consideration. *N. J. S. A.* 40:60–26(c) contemplates the municipality shall receive the benefit of competitive bidding. The public notice of the offer "shall be published * * * not less than 2 nor more than 10 days before said further meeting" of the governing body at which final approval may be given. Whether that amount of notice will suffice to attract competing offers must depend upon the complexity of conditions of sale. If the proposal embraces requirements for development of the land which are so extensive or detailed that other persons cannot reasonably prepare to bid in the limited period provided by the statute, the legislative aim is not fulfilled. Accordingly, the question I would reserve, without of course expressing any view upon it, is whether the cited section may be used when the conditions are incompatible with a fair opportunity to prepare to bid intelligently within the allotted period of time.

HANEMAN, J. (concurring). I concur in the result attained by my colleagues. However, I conceive that *N. J. S. A.* 40:60–26(c) permits no changes in the advertised terms and conditions of sale prior to the reception of bids on the date set for the acceptance or rejection of the original offer and then permits a "modification" only in a limited sense.

*N. J. S. A.* 40:60–26(c) had its origin in 1939 as a part of an amendment to *N. J. S. A.* 40:60–26. The original bill (S–241) which eventually resulted in the enactment of subsection (c), contained a number of additional provisions concerning the sale of municipal lands. Attached thereto was a statement which reads in part:

"The present act is intended by subsection (c) to increase the power of the governing body of any municipality by authorizing sale of any land by private sale if approved by resolutions passed at two meetings of said governing body, the second meeting being after public notice thereof at which anyone interested may have an opportunity to bid a higher price * * *."

This bill was superseded by a committee substitute which when passed became *L.* 1939, *c.* 344. The differences between the original bill as introduced in the Senate and the bill as finally enacted concerned, (1) subsection (d), wherein the words "Commissioner of Local Government" were substituted for "Municipal Finance Commission," and (2) the last two paragraphs of the act, wherein a municipality was authorized to accept a mortgage in any sale on credit where previously the municipality had been restricted in such sales to the security device of a municipal lien. It is thus seen that these changes neither directly nor indirectly affected subsection (c) nor its purpose. The conclusion is reasonable that the Legislature was fulfilling its originally stated purpose in enacting subsection (c), *i. e.*, to permit bids as to price alone.

*N. J. S. A.* 40:60–26 was subsequently amended by *L.* 1944, *c.* 160; *L.* 1946, *c.* 106; *L.* 1947, *c.* 417; *L.* 1948,

*c.* 245; *L.* 1957, *c.* 86. Only *L.* 1947, *c.* 417 affected subsection (c). This statute added the clause "in which case the sale is to be made to the highest bidder" immediately following the provision "provided that no higher price or better terms shall then be bid for said property by any other person." It is to be noted that the Legislature limited the award to the "highest bidder" and did not see fit to extend the provision so that the award could be made to a person offering a land use or improvement different from those specified in the advertisement.

The true meaning and intention of legislation must be derived from the whole act and not from any single component part. *Denbo v. Moorestown Twp.,* 23 *N. J.* 476 (1957). The meaning of a statute and the intention of the Legislature in adopting it must be gained, not alone from the words used within the particular section involved, but from those words when read in connection with the entire enactment of which it is an integral part. *Petition of Sheffield Farms Co.,* 22 *N. J.* 548 (1956). The words, "said terms and conditions, or a modification thereof" must be read in conjunction with the proviso that "no higher price or better terms shall then be bid" and that the sale must be made to the "highest bidder." This signifies, to me, that on the date set for confirmation or rejection of the initial offer, the bidding is restricted to the amount and manner of payment of the monetary consideration, subject to the initial restrictions concerning the land use and improvements set forth in the published notice.

The statement appended to the original bill confirms the conclusion that the "modification" of "terms and conditions" concerns itself solely with the cash consideration to be paid. To ascribe to the word "conditions" a connotation which would permit a bidder to submit an offer which contemplates a change in the restricted use and "conditions" of improvement from those advertised would destroy the standard upon which all interested parties must compete and would open wide the door to fraud. Also, if such

change were permitted, the purpose of advising the public in advance of the intended restrictions and use so that they might appear and be heard thereon would be frustrated.

As above stated, I conceive that "modification" of the "terms and conditions" permits change only of the mode and method of payment, to the end that the sale is made "to the highest bidder."

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.