718 A.2d 1225

SEACOAST BUILDERS, INC., PLAINTIFF,
v. HOWELL TOWNSHIP BOARD OF
EDUCATION, DEFENDANT.

Superior Court of New Jersey
Law Division
Monmouth County

Decided July 10, 1997.

*Edward Stokes, III,* for plaintiff *(Stokes & Throckmorton).*

*Michael DiCicco,* for Howell Township Board of Education *(Bathgate, Wegener & Wolf).*

*Gerard J. Onorata,* for amicus curiae The Building Contractors Association of New Jersey *(Peckar & Abramson).*

LEHRER, J.S.C.

## *FACTS*

The Howell Township Board of Education advertised for bids for the construction of a new middle school to be located on Ramtown–Greenville Road (the Project). As required by *N.J.S.A.* 18A:18A–18 (the Statute), the Board advertised for bids for:

(1) a single overall contract for all the work and materials required to complete the middle school and

(2) separate contracts for plumbing and gas fitting work (plumbing), heating and ventilating systems and equipment (HVAC), electrical work, structural steel and ornamental iron work (structural steel), general construction work and such other work and materials required for the completion of the project (five prime contracts).

On or before April 23, 1998, the Board received all of the bids in connection with the Project. No bid was submitted for a single contract to complete all of the work. Bids, however, were submitted for each of the prime contracts including several bids for the general construction portions of the work.

The first round of bidding was as follows:

| TRADE | LOWEST BIDDING CONTRACTOR | BID | ARCHITECT'S COST ESTIMATE |
|---|---|---|---|
| Plumbing | Harold Marks Plumbing | $ ·654,277 | $ 1,018,680 |
| HVAC | M & R Mechanical Contractors | $ 3,144,000 | $ 2,809,000 |
| General Construction | Torchio Brothers, Inc. | $ 6,300,000 | $ 6,345,454 adjusted to $ 6,980,000 |
| Electrical | DEC Electrical Contractors | $ 1,814,000 | $ 1,760,000 |
| Steel | Mastercraft Iron, Inc. | $ 1,899,861 | $ 1,953,000 |

On the basis of this tabulation, Torchio Brothers was designated the lowest bidder for the general construction contract. Torchio Brothers, however, advised the Board that due to an error in the calculation, it had underestimated its bid by $600,000. Torchio claimed its bid should have been $6,900,000 not $6,300,000. Due to the error, Torchio Brothers asked to be released from its bid, and on May 6, 1998, the Board granted the request of Torchio Brothers.

The Board then considered the remaining bids submitted for the general construction work. Plaintiff, Seacoast Builders Corporation (Seacoast), was designated as the new lowest bidder with a bid of $7,374,000. A comparison of Seacoast's bid with the architect's cost estimate of $6,345,454 indicated the bid was $1,028,546 or 16% higher than the architect's cost estimate, and $474,000 higher than the corrected bid of Torchio Brothers.

On the recommendation of the Assistant Superintendent of Schools, who is also the Board Secretary, and the Board architect,

the Board voted to rebid the general construction and HVAC portions of the project in an attempt to achieve cost savings (the lowest HVAC bidder exceeded the architect's estimate by $335,000 or 12%). At the same time, bids for the three remaining prime contracts were accepted by the Board. Mastercraft Iron, Inc. submitted the lowest bid for structural steel; its bid was $53,139 lower than the architect's cost estimate. Harold Marks Plumbing submitted the lowest bid for the plumbing; its bid was $364,403 lower than the architect's cost estimate. DEC Electrical Contractors submitted the lowest bid for the electrical work; its bid was $1,184,400 or 3% higher than the architect's cost estimate. The Board deemed this overage insignificant and felt it was the lowest obtainable bid based upon the other bids received and its experience in the marketplace. The three prime contracts were subsequently awarded and permission was given to each to start work on the project.

## CLAIM BY SEACOAST

On May 14, 1998, Seacoast filed a complaint in lieu of prerogative writ challenging the Board's rejection of its bid while accepting bids and awarding contracts to three other Primes. Seacoast sought temporary restraints preventing the Board from continuing the bidding process.

This court enjoined the Board from awarding the general construction contract until further order, but permitted the second round of bidding to continue including the opening of the new bids.

At trial, Seacoast seeks a judgment compelling the award of the general construction contract to it. Seacoast argues that the Board violated *N.J.S.A.* 18A:18A–18 by rejecting its bid (which was the low bid after the bid of Torchio Brothers, Inc. was withdrawn) while simultaneously accepting the low bids for the structural steel, plumbing and electrical prime contracts. It is claimed that *N.J.S.A.* 18A:18A–18 mandates the Board must

award all five prime contracts to the lowest responsible bidders at the same time even if one or more exceed the architect's budget.[1]

## ISSUE

This court is faced with an issue which has not been addressed by any court in this state. Does *N.J.S.A.* 18A:18A–18 mandate the award of all five prime contracts to the lowest responsible bidder at the same time, or can the Board award contracts at different times through the continued use of the statutory process?

## DECISION

■ In order to decide the issue, the express language of the statute and its purpose must be reviewed. *N.J.S.A.* 18A:18A–18 in relevant part provides:

> Contracts shall be awarded to the lowest responsible bidder. The contract shall be awarded in the following manner: If the sum total of the amounts bid by the lowest responsible bidder for each branch is less than the amount bid by the lowest responsible bidder for all the work and materials, the Board of Education shall award separate contracts for each of such branches to the lowest responsible bidder thereof, but if the sum total of the amount bid by the lowest responsible bidder for each branch is not less than the amount bid by the lowest responsible bidder for all the work and materials, the Board of Education shall award a single overall contract to the lowest responsible bidder for all of such work and materials.

The Public School Contracts Law was enacted to impose similar requirements on the purchasing procedures utilized by local boards of education to those required by the Local Public Contracts Law. *F.S.D. Industries, Inc. v. Board of Education of the City of Paterson,* 166 *N.J.Super.* 330, 334, 399 *A.2d* 1021 (App. Div.), *certif. denied,* 81 *N.J.* 263, 405 *A.2d* 808 (1979). Patently, the purpose of the bidding statute is one of protecting the public interest by keeping costs at a minimum and preventing fraud.

---

[1] It should be noted that the litigants have given notice of this prerogative writ action to all interested parties including the contractors whose bids were accepted and the rejected HVAC contractor. Despite such notice, no appearances have been made on behalf of any of the contractors.

*Board of Ed. of City of Asbury Park v. Hoek,* 38 *N.J.* 213, 231, 183 *A.*2d 633 (1962). The New Jersey statute which imposes a duty upon a school board to award building contracts to the lowest responsible bidder was intended to benefit the public as an entity by securing to them the prudent expenditure of taxpayers' funds. *Somers Construction Co. v. Board of Education For the Southern Gloucester County Regional High School District,* 198 *F.Supp.* 732, 736 (D.C.N.J.1961). The purpose of the bidding laws is to protect the public by placing bidders on an equal footing and to ensure that competition will eliminate the possibility of fraud, extravagance or favoritism in the expenditure of public funds. *Bil Jim Construction Co. v. Manchester Township Bd. of Education,* 236 *N.J.Super.* 603, 606–07, 566 *A.*2d 585 (Law Div.1989); *Skakel v. North Bergen, Tp.,* 37 *N.J.* 369, 378–79, 181 *A.*2d 473 (1962).

In *Bank v. Board of Education of City of New York,* 305 *N.Y.* 119, 111 *N.E.*2d 238 (1953), the New York Court of Appeals was faced with an analogous problem. The Board accepted bids in a school addition project for the general construction and the electrical work and rejected all bids for HVAC and plumbing as they were over budget. The HVAC and plumbing contracts were to be re-advertised after an amendment to the budget was passed. Plaintiff, the electrician, filed suit after completing the work, for damages as a result of time delay and alleging fraud for withholding information concerning the re-advertising of the two rejected contracts. The electrician claimed that after the defendant awarded one contract for the project, the defendant had a duty to award the other contracts promptly as the contractors had a deadline to complete the project which could only be accomplished by a coordination of the efforts of all contractors.

After trial and intermediate appeal, the New York Court of Appeals ruled that the Board of Education should not have withheld information concerning the delay of awarding the two contracts.

The New York Court of Appeals reasoned that the school addition is an integrated project which requires co-ordination of

the various types of work. The instructions to the bidders gave notice that the contractors were required to coordinate their efforts with other contractors. In addition, the work had to be completed by a date certain. Therefore, the New York Court held that the defendant had a duty to disclose the true bidding process and the possible delays in the project so that the electrician could properly prepare its bid.

The Howell Township Board, in its Notice to Bidders, placed a similar duty upon the contractors by stating:

"Schedule all construction activities at site with *** other prime contractors to *** meet specified completion dates. It is the responsibility of all prime contractors to meet completion schedule within owner's education schedule." (See, Exhibit D–6, Section 01015–Project Schedule, Part 1, subsection 1.02(B)(1)).

The Notice to Bidders imposes a duty on all five prime contractors to coordinate their efforts in order to complete the project on time. The piecemeal award of the five prime contracts can only impede that mandate, lead to delays, cost overruns, claims for extras, and time consuming and costly litigation. The piecemeal award of prime contracts flies in the face of the intent and purpose of the statute; to place bidders on equal footing, keep costs at a minimum, prevent fraud, and insure the prudent expenditure of taxpayers funds.

As a result of the piecemeal award process, the Howell Township Board is now legally liable to the three awarded prime contractors as their work has begun on the project. No contracts have been awarded for the HVAC and general construction. By awarding contracts in a piecemeal fashion, the Board has begun the construction of a school without knowing if it can in fact be completed, or built within budget. The rebid for the general construction and HVAC work may bring bids that are higher than the rejected bids and over the architect's estimate. In addition, new bids may not be received as original bidders have disclosed their computative position and have theoretically set forth their lowest possible bid which was rejected during the initial process.

The failure to award all five prime contracts at the same time has the clear potential to increase costs, jeopardize the completion

of the school, and generate substantial litigation all to the detriment of the taxpayers and contrary to the purpose of the statute. The Board's decision to enter into contracts with the steel, plumbing and electrical contractors without knowing if the Board will be able to obtain a HVAC or general contractor within the budget is not a process that insures the prudent expenditure of taxpayers funds. The action taken by the Howell Board of Education is inconsistent with the words, intent and meaning of *N.J.S.A.* 18A:18A–18; contracts cannot be awarded in a piecemeal fashion. All five prime contracts must be awarded at the same time, or the award of the initially acceptable bids be held pending the rebid of the others, so that all five primes can be awarded at the same time.

### *REMEDY*

Although the procedure used by the Board is not authorized by the Statute, it was implemented in a good faith attempt to achieve cost savings for the taxpayers. There was no intent to violate a previously uninterpreted statute. The three prime contracts were awarded to the lowest responsible bidders based on a procedure that, according to the testimony at trial, was believed to be correct and in conformance with the standard procedure used in public contracting.

In *Warnock Ryan Leasing, Inc., Warnock Ryan Dodge, Inc. v. Sea Breeze Ford,* 194 *N.J.Super.* 11, 475 *A.*2d 1270 (App.Div.1984), the Appellate Division considered how best to apply a public procurement statute in the public interest. In *Warnock Ryan Leasing, supra,* the State of New Jersey, through the Division of Purchase and Property, Department of the Treasury (the division) divided a single procurement contract for the purchase of full-size pursuit vehicles between two bidders by awarding the state portion of the contract to Sea Breeze Ford and the local portion of the contract to Rice and Holman Ford, Inc. The Appellate Division held the awards were bifurcated and then decided that bifurcation of the award, by the division, was not permitted pursuant to

N.J.S.A. 52:25–1 to –26 Purchasing Law. The court declined to apply its decision to the facts of the particular case and declined to undo the bifurcated awards, stating at page 21:

"The final issue is the application of our decision. The Sea Breeze contract has been upheld and will be enforced. The Rice and Holman contract has been invalidated. We are aware, however, that Rice and Holman and various local governments have made contracts pursuant to the award to Rice and Holman. Obviously, they were justified in relying on the state contract. Indeed we denied a stay of the award to Rice and Holman. Further orders for additional automobiles may well have been already made. While we now invalidate the agreement supporting these purchases there is no reason to believe they were in any way harmful to the public. Indeed, since Rice and Holman was low on the local bids, the public may have benefited by what has happened. We have invalidated the bifurcation procedure not because we think it unreasonable or unwise but rather because we find it to be unauthorized. Accordingly, our decision with respect to Rice and Holman is to be prospective only. *See Jersey Shore, Etc. v. Estate of Baum,* 84 *N.J.* 137, 152, 417 A.2d 1003 (1980). All contracts or orders made until this time shall, if otherwise lawful, be enforced and carried out notwithstanding this opinion. Rice and Holman shall not, however, accept further orders pursuant to the authority of the contracts invalidated by this decision. Of course, we do not intend to interfere with the award of any contract pursuant to any other provision of law."

An award of the general construction contract to Seacoast is not the appropriate remedy for a violation of the Statute in this case. The court cannot compel the Board to accept a bid that it had a good faith basis to reject prior to a definitive statement on the interpretation of the Statute, nor can this court order the entire procedure undone, and a rebid of the entire project. Either result, under the circumstances, would be contrary to the intent of the public contracting law, to have the work accomplished by the lowest responsible bidder, within the budget of the project, and to assure a prudent use of taxpayer funds. An unintentional violation of a statute designed to protect the public should not result in a penalty to the taxpayers by delay, cost overruns and endless litigation. The remedies sought by Seacoast in this case, do not advance the purpose of the Public School Contracts Law.

The appropriate remedy for the unintentional violation of the statute, in this case only, is the rebid of the general construction and HVAC portions of the project. The remedy advances the purpose of the Statute and places all of the bidders on an equal

footing promoting competition and ensuring the taxpayers obtain the best possible price for the work. This remedy is consistent with the public purpose of the Statute and cures the harm that the Statute seeks to prevent. Accordingly, the Court will permit the rebidding process to continue. The second round of bidding can be opened and awarded, if appropriate.

In the future, the law is to be interpreted mandating the award of all five prime contracts at the same time consistent with this opinion.