140 N.J. Super. 65 (1976)
355 A.2d 197
INTERSTATE WASTE REMOVAL CO., INC. (FORMERLY DELORENZO-INTERSTATE WASTE REMOVAL CO., INC.), A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
THE BOARD OF COMMISSIONERS OF THE CITY OF BORDENTOWN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, MARILYN CLYDE, T/A GARDEN STATE REMOVAL SERVICE CO. AND FREEHOLD CARTAGE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1976.
Decided March 11, 1976.
*67 Before Judges LYNCH, LARNER and HORN.
Mr. Arthur Meisel argued the cause for appellant (Messrs. Jamieson, McCardell, Moore, Peskin and Spicer, attorneys; Mr. Herbert F. Moore of counsel).
Mr. Henry G. Tutek argued the cause for respondent Board of Commissioners of Bordentown (Messrs. Kessler, Tutek and Gottlieb, attorneys).
Mr. Benjamin Marmer, attorney for respondent Marilyn Clyde, t/a Garden State Removal Co.
The opinion of the court was delivered by LARNER, J.A.D.
On October 17, 1974 the Board of Commissioners of the City of Bordentown advertised for bids *68 for a contract to perform garbage collection and disposal service for the municipality. On October 28, 1974 three bids were submitted which were rejected as unreasonable in comparison with prior cost estimates. The city proceeded to readvertise and on November 18, 1974 bids were submitted by plaintiff Interstate Waste Removal Co., Inc (Interstate) and defendant Garden State Removal Service Co. (Garden State). These bids were also rejected as excessive based on the cost estimates. It was at that meeting that the board of commissioners announced its intention to negotiate a contract pursuant to the authorization contained in N.J.S.A. 40A:11-5(4).
An initial effort to negotiate a contract with Middletown Refuse Removal, Inc. proved abortive in view of the lack of qualification of that contractor. Thereafter, notice was given to the prior bidders and other contractors that the city planned to negotiate the garbage contract at a meeting to be held on February 26, 1975. On that date plaintiff Interstate, defendant Garden State and three other interested contractors appeared at city hall. A form of contract was distributed to the parties present, and each was instructed to read it and insert a figure for the performance of the described services. Several questions were asked and answered with respect to clarification of the meaning of certain of the clauses in the contract.
Each interested party reviewed the papers separately and without discussion among themselves or with the city representative. Four of the contractors completed the forms by inserting the price at which they would be willing to perform the contract. The proposals were publicly announced and no one volunteered or offered to modify his figure. Neither did any contractor object to the procedure undertaken by the city.
Defendant Garden State submitted the lowest figure, Freehold Cartage, Inc. was the second lowest bidder, plaintiff Interstate was third and Fred Smith Disposal Co. fourth. *69 On April 14, 1975 the city entered into a contract with Garden State at the proposed price of $126,000, which was less than any of the bids received at the two formal bidding proceedings and the lowest of the offers submitted on February 26, 1975.
Plaintiff brought an action in lieu of prerogative writs to set aside the award of the contract to Garden State. On the basis of undisputed facts demonstrated by the affidavits and documents the trial judge sustained the legality of the contract award to Garden State and entered judgment accordingly. Interstate appeals from this determination.
As a preliminary matter we have considered the assertion by the city that plaintiff as an unsuccessful bidder or offerer has no standing to attack the contract award to Garden State. See Camden Plaza Parking v. Camden, 16 N.J. 150, 158-159 (1954); Waszen v. Atlantic City, 1 N.J. 272 (1949); William A. Carey & Co. v. Fair Lawn, 37 N.J. Super. 159 (App. Div. 1955); M.A. Stephen Const. Co. v. Rumson, 125 N.J. Super, 67, 74 (App. Div.), certif. den. 64 N.J. 315 (1973). Reference to this line of cases is inappropriate as to plaintiff's major contention. Its prime position is that the award based upon the negotiation procedures of the Local Public Contracts Law of 1971 is invalid because it was deprived of the opportunity to negotiate by virtue of the manner in which the negotiation session was conducted. As such, it has adequate standing to challenge the award to defendant. Cf. Lieberman v. Neptune Tp., 50 N.J. Super. 192, 198 (App. Div. 1958); Juice Bar Corp. v. Neptune Tp. Comm., 36 N.J. Super. 164, 171 (App. Div. 1955); Escrow, Inc. v. Haworth, 36 N.J. Super. 469, 474 (App. Div. 1955).
The first argument advanced by plaintiff is that the procedure utilized by the city in obtaining a contract price from the invited contractors was not in fact negotiation as contemplated by N.J.S.A. 40A:11-5(4). Plaintiff, in this connection, attributes to the statutory term "negotiate" a meaning which mandates a give and take conference with *70 discussion across a table wherein the parties bargain for a desired result. It asserts, therefore, that the method of inviting prospective contractors to submit their figures in writing does not comport with the statutory mandate and deprived it of "a reasonable opportunity to negotiate."
We do not construe the statutory language in the manner suggested by the appellant. The term "negotiate" is not used as a word of art designating any particular method of arriving at a contract price. It is simply an alternative method distinguishable from rigid bidding procedures which is permitted after a municipality has been unable to obtain a reasonable price through competitive bidding. The public welfare is protected by the requirement that the public entity notify at least all the responsible bidders and that the contract be awarded only if the negotiated price is lower than the lowest rejected bid price and is the lowest negotiated price offered by any responsible supplier. N.J.S.A. 40A:11-5(4)(a) and (b). The city's award to Garden State fully complied with these prerequisites and the ultimate contract price resulted in a saving of public funds.
Where negotiation is permissible under the statute the municipality has great flexibility and may use any conceivable business method to accomplish the salutary goal of obtaining the lowest available price. There is no magic or uniform procedure which must be utilized. So long as it is structured to accomplish the purpose of the legislation, namely, to achieve the lowest available price from a responsible bidder, and the former bidders are given an opportunity to participate, the municipal officials have fully complied with their statutory duty.
It is noteworthy that plaintiff herein participated in the proceeding undertaken by the city and submitted its offer without raising an objection. Furthermore, after the figures were announced it did not at any time request further discussion or negotiation, nor did it offer to perform the work for less than the $126,000 figure submitted by Garden State. *71 There was a considerable time span between the negotiating session and the execution of the contract. Yet plaintiff uttered not a sound leading toward an offer of a lower price. Its position therefore is limited to an attack on the procedural niceties of the method adopted by the municipality without any suggestion that the governing body failed to obtain the best available figure.
We do not find that the adopted procedure offends the intent or spirit of the legislation and therefore reject appellant's contention as without merit.
Appellant's additional argument questions the propriety of the award to Garden State on the theory that it is not a "responsible" bidder because it does not have the requisite "moral integrity." It is pointed out that when Garden State submitted its first competitive bid on November 18, 1974 it was not qualified to do so because it did not hold a certificate of public convenience and necessity issued by the Board of Public Utility Commissioners. See N.J.S.A. 48:13A-6.
The factual background on this issue is that Garden State filed an application for a certificate on June 24, 1974 which was not issued prior to November 18. On subsequent inquiry it developed that the PUC had failed to act because the filed tariff was not in order. Thereafter the deficiency was corrected, a temporary certificate issued on December 31, 1974, and a permanent one issued on February 6, 1975.
A direct challenge aimed at the lack of qualification or responsibility of a successful contractor cannot be brought by one whose only interest stems from his position as an unsuccessful bidder who would not be entitled to the contract even if the defendant were disqualified.[1] Plaintiff with the third lowest bid has no standing to question the responsibility of the lowest bidder, whether the latter has been awarded the contract through normal public bidding practices or through *72 the statutory negotiation procedures. Waszen v. Atlantic City, supra; William A. Carey & Co. v. Fair Lawn, supra.
Even if it had the requisite standing, its argument is baseless on the merits. It it undisputed that Garden State did possess such a certificate when it submitted the offer at the February 26, 1975 session. In view of the fact that the contract was not awarded on the basis of the bids of November 18, 1974, the absence of a certificate at that time has no relevancy upon the qualification of Garden State to enter into or perform the contract in issue in this litigation.
Nevertheless plaintiff claims that the submission of a bid without such PUC approval in November is a taint on the moral integrity of Garden State which should have disqualified it as a public contractor. See Arthur Venneri Co. v. Paterson Housing Auth., 29 N.J. 392, 403 (1959); Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 479 (1971). It points particularly to a PUC regulation which provides that no person may bid for a solid waste collection or disposal contract unless he is the holder of the requisite certificate. N.J.S.A. 14:3-10.3(b). The allegation that Garden State is irresponsible on moral grounds merely because of the absence of a PUC certificate at the time of the rejected bids of November 1974 is patently frivolous. In the absence of other proof addressed to lack of moral integrity, the award of the contract to Garden State was legally justified.
Judgment is affirmed.
NOTES
[1] Freehold Cartage, Inc., the second lowest bidder, did not take an appeal from the judgment below.