155 N.J. Super. 593 (1977)
383 A.2d 143
CATHERINE SUENRAM, PLAINTIFF,
v.
THE SOCIETY OF THE VALLEY HOSPITAL, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 30, 1977.
*595 Messrs. Orbe, Nugent & Collins, attorneys for plaintiff (Mr. Frank Holstein, appearing).
Messrs. Riker & Danzig, Scherer & Debevoise, attorneys for defendant (Mr. Anthony Manger, appearing).
MINUSKIN, J.J.D.R.C., Temporarily Assigned.
This matter was brought before the court on plaintiff's order to show cause pursuant to R. 4:52-1 seeking to enjoin defendant Valley Hospital from prohibiting or interfering with plaintiff's decision to be treated for cancer with the controversial drug laetrile.
The issue which faces the court is whether an informed terminally ill patient can be limited in the choice of treatment received from a licensed physician to state  or hospital  sanctioned alternatives.
The essential facts are not in dispute.
Catherine Suenram is the 78 year old widow afflicted with terminal cancer currently hospitalized at The Valley Hospital (Valley) in Ridgewood, New Jersey, who desires to receive laetrile in an effort to cure or arrest the course of her cancer. Laetrile, also known as Vitamin B-17 and amygdalin, is a chemical compound extracted from the kernels of apricots and has been, over the years, recommended for the treatment of cancer. Laetrile is not generally recognized by qualified experts as a safe and effective cancer drug, but it has been claimed by its various proponents to cure or control the spread of cancer, or more moderately to *596 mitigate the symptoms of the disease without curing it.[1] 42 Fed. Reg. 39768 (1977).
Plaintiff was admitted to Valley sometime in August 1977 where she underwent extensive treatment for her cancer, including chemotherapy. Her condition has steadily deteriorated. Her prognosis is poor; death is imminent.
At the request of plaintiff and her two daughters, who claim to have familiarized themselves with both the pros and cons of laetrile treatment, her physician, Dr. Allen Chinitz, is willing to administer laetrile. Since the substance has not been approved by the Food and Drug Administration, National Cancer Society or American Cancer Society, and has not been proven to be an accepted method for the treatment of cancer, Valley, in the exercise of its best medical judgment, refuses plaintiff or any patient hospitalized therein to be treated with laetrile. Plaintiff's offer to defendant of release from liability has not altered defendant's position. The order to show cause brought by Mrs. Suenram seeks a temporary restraining order prohibiting the defendant from interfering with the administration of the drug laetrile to the plaintiff.

Temporary Restraints
An injunction is an extraordinary equitable remedy ultilized primarily to forbid and prevent irreparable injury, and it must be administered with sound discretion and always upon considerations of justice, equity and morality *597 involved in a given case. N.J. State Bar Ass'n v. Northern N.J. Mortgage Ass'n, 22 N.J. 184 (1956); Citizen's Coach Co. v. Camden Horse R.R. Co., 29 N.J. Eq. 299, 303 (1878). Injunctive relief should generally be granted in a suit where the issue presented is grave and difficult, where the injury to the moving party will be irreparable if the relief is denied, and where the inconvenience or loss to the opposing party will be minimal if the relief is obtained. Rutherford v. U.S., 542 F.2d 1137 (10 Cir.1976); Wyrough & Loser, Inc. v. Pelmor Laboratories, 376 F.2d 543 (3 Cir.1967).
In the case at bar the court is faced with a grave and weighty problem. A terminally ill woman, whose prognosis suggests that she will not survive this very month under the current "orthodox" treatment she is receiving, requests an alternative. The dying request of this unfortunate woman is that she be permitted to take a drug whose use is not sanctioned by the hospital where she is a patient.
It is beyond question that she is in danger of suffering irreparable injury if relief is postponed for the shortest period of time or denied. Any legal right she may have to receive laetrile treatment from her personal physician will likely be of only academic value if secured at sometime in the future. For the terminally ill, the phrase "justice delayed is justice denied" is especially significant. Rutherford, supra.
On the other hand, defendant's potential loss is minimal if not completely illusory where, by the execution of legally binding release forms, the hospital is immunized from civil suit and would in no way be subject to criminal prosecution for allowing plaintiff's state-licensed physician to administer laetrile.

Laetrile Use
This court recognizes that perhaps the soundest rationale for disallowing the administration of laetrile, a relatively nontoxic but unproven cancer treatment, is the prevention of misguided public reliance on a "false hope." This, it is suggested, *598 may result in cancer victims "delaying or foregoing diagnosis and treatment which is generally recognized by the medical profession as beneficial and effective." United States v. General Research Laboratories, 397 F. Supp. 197, 199 (C.D. Cal. 1975).
The court is not faced with a situation in which a naive patient has been led away from the more effective "orthodox" therapy. Plaintiff has undergone extensive chemotherapy and availed herself of all the technology which would, in the words of defendant, offer her "the best hope for recovery." The treatment was ineffectual in arresting or curing her cancer. She now turns to laetrile as her last hope, the only alternative left after undergoing the most effective treatment currently available in the medical field. It would hardly serve the above-mentioned public policy in denying an unsuccessful chemotherapy patient an opportunity to take laetrile. "Where a person is terminally ill with cancer and unresponsive to other treatments, the public harm is considerably reduced." Carnohan v. United States, Civ. No. 77-0010-GT (S.D. Calif. 1977).
A legitimate public policy may, in fact, be served by permitting this terminal patient to receive laetrile at this advanced stage of her disease. If the laetrile therapy is a hoax or totally ineffectual, this should be proven through clinical experimentation and made known to the public. American Medical News, July 18, 1977, at 1, 16, col. 1. Unintentionally, those opposed to the use of laetrile may have helped to perpetuate the myth of its remedial value by depriving victims similarly situated to plaintiff of access to the drug.
Many cancer patients have undergone laetrile treatment, and have, whether justifiably or not, formed beliefs that the substance has eased their pain or prolonged their lives. See Senate Institutions Health & Welfare Committees. Public Hearings, July 19, 1977. Government pronouncements to the contrary, as expressed in the "Commissioner of the Food and Drug Administration's Decision on Laetrile," in 42 Fed. Reg. 151 (1977), and hospital regulations prohibiting its *599 administration, do not readily dispel the public's allegedly misplaced faith. They have precipitated an unfortunate syndrome which finds patients who are deprived of laetrile treatment in this country going elsewhere, notably Mexico, to obtain similar treatment. American Medical News, Dec. 19, 1977, at 11, col. 4. In so doing the cancer victims in many instances lose close contact with their families and doctors, not to mention the other expenses and hardships which flow from having to travel abroad to receive treatment.
If laetrile were more readily available in this country, cancer patients seeking this substance would not be forced to leave their homes and families to obtain treatment in foreign countries. Surely others who would opt for taking laetrile abroad as their sole weapon against cancer would be persuaded to remain under the care of our local doctors and use laetrile in conjunction with the more conventional "orthodox procedures." Rutherford v. U.S., 438 F. Supp. 1287 (W.D. Okla. 1977)
A certain by-product of the carefully regulated use of laetrile would be the dispelling of any misplaced faith in a drug as its level of effectiveness or reliability rapidly becomes evident to the American public.

Hospital's Duty
Valley has a profound interest in maintaining high standards of medical care and in protecting the health and lives of its patients. It is not disputed that the hospital does have a duty to review the quality of patient care and provide safeguards to insure that, for instance, only competent physicians are admitted to the hospital's surgical staff. Corleto v. Shore Memorial Hosp., 138 N.J. Super. 302 (Law Div. 1975).
The Corleto decision suggests that a hospital may even be held liable for knowingly allowing an independently retained doctor to perform an operation which would constitute an act of malpractice per se. Fiorentino v. Wenger, 19 N.Y.2d *600 407, 280 N.Y.S.2d 373, 227 N.E.2d 296 (Ct. App. 1967).
This court, however, is not dealing with a medical malpractice action in this instance. Defendant hospital, after insuring that plaintiff has been effectively advised as to the lack of proven value of laetrile, and after receipt of consent and release forms in connection with the proposed laetrile treatment, is thereafter relieved of the jeopardy of a medical malpractice suit. Defendant candidly admits that if the appropriate releases were executed, it would not be troubled by its exposure to liability.
Valley submits that there is some ancillary interest related to the maintenance of high medical standards of practice which warrants its interference with the administration of laetrile to plaintiff. It maintains that it is a private hospital dedicated to the care and cure of its patients subject to state regulations and those of the American Medical Association and American Hospital Association. Valley fears it could lose its accreditation if it were to permit the use of laetrile in its hospital. Defendant contends that in the exercise of the duty of care to its patients, and in its best medical judgment it could not condone the use of laetrile, especially in view of its lack of support from the Federal Drug Administration, National Cancer Association and the American Cancer Society.
This court is not convinced that the above-mentioned medical associations would, in fact, act to remove or penalize defendant for complying with the temporary restraining order issued by this court. There has been no evidence offered by the defendant which would suggest that sanctions by these medical associations have affected hospitals in the 13 jurisdictions where the use of laetrile has been mandated by legislation.
The court is likewise not convinced that injunctive relief should be denied because it would be unfair for defendant's staff to be forced to participate in the administration of a drug which is, in the light most favorable to defendant, a *601 mildly toxic placebo. There is no evidence that suggests that the hospital personnel will actually be called upon to directly administer the controversial drug. Plaintiff's doctor would be solely responsible for the drug's administration. This does not mean that the hospital would be justified in neglecting to provide routine assistance to the doctor  for example, a glass of water so that the patient may swallow her pill. There is nothing to suggest that providing such routine assistance would be repugnant to the personal or professional ethics of those hospital employees so charged. Moreover, those hospital employees would also be protected by the cloak of this order and shielded from malpractice liability by the consent forms and releases signed by the plaintiff.
Defendant hospital finally asserts that if plaintiff or her physician wish to pursue a course of treatment using laetrile, they are free to do so in another hospital such as Bergen Pines, which might not prohibit its use. This court finds, after giving due consideration to the age and weakened physical condition of plaintiff, that it would be unconscionably burdensome to both plaintiff and her family to be forced to change hospitals at this time. We could not, in good conscience, subject plaintiff to the often traumatic and psychologically disorienting effects of moving as a condition to her being able to enjoy whatever benefits may be derived through laetrile treatments.

Privacy
The efficacy of laetrile does not enter into this case. The issue here is human liberty and the right of an informed terminal cancer victim to choose which treatment she shall receive from a state-licensed physician.
In the 1972 landmark informed-consent case, Canterbury v. Spence, 150 U.S. App. D.C. 263, 464 F.2d 772 (D.C. 1972) the District Court noted that: "The root premise is the concept, fundamental in American jurisprudence, that *602 every human being of adult years and sound mind has a right to determine what shall be done to his own body." According to the Supreme Court, it is also unchallengeable that the Constitution protects a right of personal privacy. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 510 (1965); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Mr. Justice Douglas refers to "the freedom to care for one's health and person" as coming within the purview of this right. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 179, 53 L.Ed.2d 201 (1973) (concurring opinion, abortion case).
It is also recognized that the right of privacy is guaranteed by the New Jersey Constitution. N.J. Const. (1947), Art. I, par. 7; In re Quinlan, 70 N.J. 10, 40 (1976); New Jersey v. Saunders, 75 N.J. 200 (1977).
The right of privacy focuses on the ultimate interest sought to be protected by the Constitution  the freedom of individual choice which has been included within "the class of what has been called the rights of personality." In re Quinlan, supra at 10, 38 at n. 7 (1976); Pound, "Equitable Relief against Defamation & Injuries to Personality," 29 Harv. L. Rev. 640, 668-676 (1916).
The right of the patient to chose or reject a cancer treatment on the advice of a licensed medical doctor, whether or not it is approved by the State or hospital, could not be of a more fundamental nature. In the most recent decision concerning the administration of laetrile to a cancer patient, the court stated:
Many knowledgeable and concerned individuals are questioning the effectiveness and wisdom of our orthodox approaches to combatting cancer. The correctness of their criticisms may not be determined for many years, and in any event such discussion provokes controversies largely beyond the realm of the court's function. Nonetheless, it appears uncontrovertible that a patient has the right to refuse cancer treatment altogether, and should he decide to forego conventional treatment does he not possess a further right to enlist such non-toxic treatments, however unconventional, as he finds to *603 be of comfort particularly where recommended by his physician. [Rutherford v. U.S., 438 F. Supp. 1287 (W.D. Okla. 1977)]
If this court refuses to grant the instant injunction it would effectively undermine the very independent choice which is a fundamental basis of the right of privacy. In re Quinlan, supra.
Doubtless, the hospital desires to protect the public and in so doing its own good name. However, the Constitutions of the nation and this State are irrevocably committed to the principle that individuals must be given the maximum latitude in determining their own destiny.
To deny a person her last opportunity to make a choice as to how to combat a disease which has ravaged her body would display a lack of understanding of the meaning of the individual's rights in our free society.
For the reasons expressed herein, the temporary restraint against defendant and in favor of plaintiff is hereby granted.
NOTES
[1] Assembly Bill 3295, introduced on May 2, 1977, has been signed into law by the Governor. It permits prescribing, administering, dispensing, manufacturing or delivery of amygdalin (laetrile or Vitamin B-17). It also provides immunity to health care facilities and the employees thereof. The patient will have a choice of treatment with laetrile while under a doctor's care.

States which have already passed legislation permitting the administration of laetrile to cancer patients are Indiana, Delaware, Alaska, Florida, New Hampshire, Texas, Arizona, State of Washington, Louisiana, Oklahoma, Oregon, Illinois and Nevada.