839 A.2d 936

THOMAS P. CARNEY, INC., PLAINTIFF, v. FRANKLIN TOWN-
SHIP BOARD OF EDUCATION, DEFENDANT, v. EPIC MAN-
AGEMENT, INC. INTERVENOR/DEFENDANT.

Superior Court of New Jersey
Law Division Somerset County

Decided June 20, 2003.

*David J. Kenny*, for plaintiff (*Hartsough, Kenny & Chase*).

*Russell Weiss*, for defendant (*Parker, McCay & Criscuolo*).

*Craig H. Parker*, for intervenor/defendant (*Peckar & Abramson*).

DERMAN, J.S.C.

This matter is a return of an Order to Show Cause as to why preliminary injunctive relief should not be granted, restraining the Franklin Township Board of Education ("Franklin" or "Board") from awarding and/or executing a contract for the construction of a new high school and requiring Franklin to re-advertise its solicitation of bids for a new high school. Plaintiff Thomas P. Carney, Inc. ("plaintiff") is a general contractor who claims that it offered the lowest bid in the second round of advertised bids and that its bid should therefore have been accepted. Instead, because the bids were not within its budget and pursuant to the authority articulated in *N.J.S.A.* 18A:18A–5c, Franklin entertained proposals with the various bidders through a third and fourth round of negotiated and non-advertised bidding. Prior to this

third round, plaintiff's lawyer complained in a letter to Franklin about the process. Nevertheless, plaintiff had participated in the third round of this format, but did not participate in the fourth round. Franklin had rejected all bids of the first, second, and third rounds as being too costly and /or not inclusive of options which it considered necessary. Intervener Epic Management Inc ("Epic") was the lowest bidder in the fourth round and was awarded the contract by the Board and seeks to maintain its award.

*N.J.S.A.* 18A:18A–5c. authorizes a board of education to award a contract without public advertising for bids if under section (2) previous bids were rejected because they were not reasonable as to price. In that event, the board of education is authorized to negotiate such contract and award it upon adoption of a resolution by a two-thirds affirmative vote. One proscription is set forth in sub-section (b) which reads as follows: "The terms, conditions, restrictions, and specifications set forth in the negotiated contract [cannot be] *substantially different* from those which were the subject of competitive bidding pursuant to *N.J.S.A.* 18A:18A–4." *N.J.S.A.* 18A:18A–5c.(b) (emphasis added). Under this exception to advertising, the school board, pursuant to sub-section c, must afford each bidder an opportunity to negotiate. The contract cannot be awarded on this basis, according to the statute "unless the negotiated price is lower than the lowest rejected bid price submitted on the second occasion by a responsible bidder, is the lowest negotiated price offered by any responsible vendor, and is a reasonable price for such goods or services." *N.J.S.A.* 18:18A–5c.(c).

In this matter, the methodology of the Board for soliciting bids for the general contractor was as follows: The first advertised round requested a base bid and separate prices for 62 alternates, denominated GC–1—GC–43 with some having additional letter designations, covering fluid items to be included or excluded from the final plan, such as an amphitheater (GC–23) and boys and girls toilet rooms (GC–43), and covering the pricing of different options,

such as various surfaces for the track (GC–18, 18A, 18B, 18C). Advertisement for this round occurred on August 23, 2002 and the bids were open on October 8, 2002. The lowest bid exceeded the Board's budget by approximately $10,000,000. The second advertised round in November 2002 utilized exactly the same methodology and still exceeded the Board's budget by more than $6,000,000.

For the third round, in reliance on the statute, which authorizes an exception to the requirement of advertising and authorizes negotiations with the bidders, the Board requested a general contractor base bid with the 62 options formerly described and also requested prices on 19 so called value added engineering items denominated GC–44—GC–62. The Board claims that these items were merely changes to surfaces and were intended to reduce the price. This third round occurred in early March of 2003. In this round, a bidder named Boch was less than $1,000 higher than Epic's bid while plaintiff's bid was more than a $1,000,000 higher.

In the fourth round, which was the second negotiated and non-advertised round, the Board changed its methodology and required that the base bid of the general contractor now include 19 of the original 62 alternatives originally set forth in the first round and 11 of the 19 value added alternatives incorporated in the third round for a total of 30 now mandatory and specific items to be included in the base bid. In addition, the Board sought prices on 23 additional value added items and indicated a switch from the provision of a construction manager to the clerk of the works. Furthermore, the Board asked for an estimate for the completion of the project within 670 days instead of the original 780 days. Fourth round proposals were received on April 3, 2003.

All parties agreed that in order to determine if the exception to public advertising had been satisfied, pursuant to *N.J.S.A.* 18A:18A–5, the court should focus on a comparison of round two, the second and final advertised bid, with round four, the second round of negotiated bids and the one in which the plaintiff did not

participate. The relevant figures of the second and fourth rounds are as follows:

| Round two [1] | Epic | Plaintiff |
|---|---|---|
| Base bid | $30,498,000 | $30,353,384 |
| Round four | | |
| Base bid | $32,199,000 | no bid |

Plaintiff relies on the fact that it was the lowest responsible bidder by $144,616 after round two, an advertised layer, and should have been awarded the contract by the defendant. Plaintiff does not claim that there was any manipulation of the bidding process or that it was barred in any meaningful way from participating in the process.

This court issued temporary restraints on April 10, 2003 and a hearing was held on April 23, 2003. At the court's direction, the parties, including Epic, submitted additional briefs and certifications. In addition, Epic has moved on short notice for a reconsideration of the court's ruling that plaintiff has standing. Upon reflection, the court has serious concerns about the plaintiff's posture as an appropriate plaintiff, which will be explained hereafter, but will assume for purposes of deciding the injunction issue that the plaintiff has standing.

This court must now determine if an injunction should issue, restraining Franklin from awarding and/or executing a contract for the construction of a new high school and requiring the Board to re-advertise its bids.

In order for a court to issue an injunction, the plaintiff must demonstrate a lack of an adequate remedy at law. *Green v. Piper*, 80 *N.J.Eq.* 288, 84 *A.* 194 (Ch.1912). Furthermore, the plaintiff must be threatened with substantial, immediate, and irreparable harm if the injunction is not ordered. *Citizens' Coach Co. v. Camden Horse R. Co.*, 29 *N.J.Eq.* 299 (Err. & App.1878).

[1] The relevant bids for round three, the first non-advertised effort, are Epic with a bid of $30,125,000 and Plaintiff with a bid of $30,374,380.

The plaintiff must prove reasonable probability of success on the merits of his claim. *New Chancellor Cinema, Inc. v. Town of Irvington,* 169 *N.J.Super.* 564, 405 *A.*2d 438 (Law Div.1979). The court must then balance the relative hardships to the parties. *Suenram v. Society Valley Hospital,* 155 *N.J.Super.* 593, 383 *A.*2d 143 (Law Div.1977). On this latter issue, the plaintiff would prevail.

The court is also satisfied that the plaintiff has no adequate remedy at law because if the contract is not re-advertised and re-bid, the plaintiff will have lost the opportunity to have its bid accepted and receive a lucrative construction contract. Similarly, the sanctity of the competitive bidding system would be diminished if it were based on fraud or favoritism. *Waszen v. Atlantic City,* 1 *N.J.* 272, 283, 63 *A.*2d 255, 260 (1949).

On the issue of irreparable harm, however, defendant claims, and this court accepts, that plaintiff has not suffered irreparable harm because under no circumstances was it in actuality the lowest bidder. While the numbers above indicate that for round two plaintiff was the lowest bidder by $144,616, that number is actually of no consequence in the process because all parties knew that some additional items from the original 62 had to be factored into the total, i.e. boys and girls toilets. When that process of including obviously mandatory items and value added engineering items is undertaken, as more fully explained hereafter, plaintiff's bid was not the lowest, and the failure to award the bid to plaintiff, in the context of a negotiating posture, was not the cause of plaintiff's injury; plaintiff's failure to bid the lowest bid was the cause, as well as its failure to participate in round four.

Focusing on the probability of success, which is the most serious deficiency of plaintiff's pursuit of an injunction, this court cannot say that plaintiff will prevail on his theory that the negotiated contract between the Board and Epic was substantially different from the advertised contracts in contravention of *N.J.S.A.* 18A:18A–5c.(b). Unfortunately, there is no case law guidance on this issue as to what constitutes or does not constitute

"substantially" different in the context of school construction bidding. This court must therefore conduct its own analysis.

In reviewing the differences between round two and round four, there are three issues identified by the plaintiff. The first is the process by which 19 of the 62 original alternates plus 11 of the value added items, first identified in round three, moved to the required category along with the addition of 23 other value added items. The second difference considered substantial by plaintiff is the estimate for a decrease in completion time by 110 days. The third substantial change is a switch from the utilization of a construction manager to a clerk of the works.

On the first issue, the bidding always contemplated a base price with the Board making the decision of adding and subtracting items as its finances and the estimates allowed. For instance, the amphitheatre was not ultimately included, but boys and girls toilet rooms (GC–43) were. While plaintiff's second round bid may be the lowest, it is not the lowest when certain important items are added back. Plaintiff understood that this was the process and, indeed, appears to accept this aspect of the process. In submitting its bid, plaintiff itemized the options accordingly.

It is therefore necessary to analyze the results by adding the options selected by the Board as necessary to the project or as a cost saver option (hereinafter called the "variants") to determine the actual price and to determine if there was a substantial difference between round two and round four.

|  | Epic | Plaintiff |
|---|---|---|
| Round two Base bid | $33,598,000 | $33,863,306 |
| Round four Base bid | $32,199,000 [2] [3] | no bid |

---

[2] The court has added back the $115,000, which Epic indicated was the amount by which it could reduce its bid if the time frame were reduced from 780 days to 670 days because that was always in the option category.

[3] The $32,199,000 includes 11 additional value added engineering items.

An analysis of these numbers demonstrates that there was only a $1,399,000 or 4.16% change between Epic's round four bid which included items that had moved from optional to mandatory and Epic's second round bid when these mandatory items are added back. That is not substantial. Furthermore, if you compare how much the variants increased the original base bid of Epic, the result of $3,100,000 is 10.16% and is still not significant. While there is no bright line rule, a number approaching a 20% change would more easily evoke a label of substantial. Finally and importantly, plaintiff's base bid in the second round, plus the variables, was higher than Epic's bid in the second round by $265,306 and $1,664,306 higher than Epic's winning bid in the fourth round.

Also, there was no change to the number of classrooms or square feet of the building. Furthermore, a review of the 23 value added engineering items set forth in the March 17, 2003 letter of Hopkins, which was attached to plaintiff's complaint, does not reflect a substantial change and includes such changes as directions to provide one project sign, not two, and eliminate wire mesh in concrete slabs on grade. The court is also not persuaded the change of manufacturer on such items as windows is substantial. As to the request to provide an estimate for decreasing the time of construction by 110 days, the court considers this of no consequence and not substantial since such option was always treated as an alternative and never factored into any definitive decision.

The plaintiff also claims that the switch to the utilization of a clerk of the works rather than a construction manager was a significant change. The plaintiff has the burden of proof that it will prevail on the merits. The court is not swayed on this issue by plaintiff's proofs that the substitution represents a significant change and, as such, this is an issue for which plaintiff will prevail on the merits.

This court finds that the three cited changes raised by plaintiff do not equate to a substantial difference between the terms of the

negotiated contract and the competitive bidding as proscribed by *N.J.S.A.* 18A:18A–5c.

Epic, as previously indicated, has also raised the issue as to the standing of plaintiff under relevant case law and asked the court to reconsider its finding that plaintiff has standing. The court is concerned that the plaintiff may lack standing in the first instance, but will not decline to issue an injunction on that basis alone. Nevertheless, that concern as to plaintiff's ability to rightfully prosecute this suit militates against the plaintiff when the court considers the likelihood of its success on the merits and finds the plaintiff comes up in the negative column.

The plaintiff's standing is suspect because it did not even bid in the fourth round. The court could find no case where a plaintiff challenged a bidding and had not actually participated in the process unless the plaintiff had been prevented from doing so. *See, Lieberman v. Township Committee of Neptune Tp.*, 50 *N.J.Super.* 192, 141 *A.*2d 553 (App.Div.1958). Furthermore, the process employed by the Board was not so difficult or onerous or incomprehensible as to prevent the plaintiff from participating or lead the plaintiff to believe that its bid would not be accepted under any circumstances and was an exercise in futility. Plaintiff describes no mischief or manipulation by the Board in this process. There was no negotiation with individual bidders. Contractors were invited to submit cost saving suggestions. Epic and one other bidder provided suggestions; plaintiff did not. Counsel for defendant insists that the only procedural change in the bidding process was the lack of advertising. Furthermore, plaintiff lacks crucial status as a citizen or a taxpayer, *Waszen v. Atlantic City*, 1 *N.J.* 272, 276, 63 *A.*2d 255, 256–57 (1949), and plaintiff cannot maintain a suit on the basis of its bid not being accepted because of specifications problems (i.e. for the third round); it may only bring suit if it is "specially affected." *Id.*; *J. Turco Paving Contractor, Inc. v. City Council of City of Orange*, 89 *N.J.Super.* 93, 100, 213 *A.*2d 865, 869 (App.Div.1965).

In *Interstate Waste Removal Co., Inc. v. Board of Com'rs of City of Bordentown,* 140 *N.J.Super.* 65, 355 *A.*2d 197 (App.Div. 1976), the plaintiff challenged the negotiating procedures under the Local Public Contracts law of 1971. The Appellate Division found that the disgruntled bidder had standing to challenge the manner in which the negotiating session was conducted. In this matter, plaintiff has not alleged any untoward behavior by the architect for the Board or anyone else. Plaintiff's lawyer apparently objected to this procedure,[4] but the plaintiff proceeded to participate in round three, a negotiated effort, and was not the low bidder. Plaintiff did not participate in round four. Under these circumstances, it is not clear that plaintiff would have standing to challenge the logistics of the fourth round, having deigned not to participate but not rushing to court to block the award of the contract. Rather, plaintiff allowed round four to take place without its participation. The court, mindful of its responsibilities to insure that the lowest responsible bidder is selected in a process that is marked by integrity, cannot find any indication of impropriety on the one hand or a disservice to the taxpayers on the other. No bidder seemed to have been preferred over another.

The court in *Interstate Waste Removal Co., Inc.,* 140 *N.J.Super.* at 70, 355 *A.*2d at 200, noted the utility of the negotiation process to achieve the lowest responsible price by a municipality for the award of a contract for garbage collection services after two fruitless attempts at competitive bidding, and observed: "Where negotiation is permissible under the statute the municipality has great flexibility and may use any conceivable business method to accomplish the salutary goal of obtaining the lowest available price. There is no magic or uniform procedure which must be utilized." The process utilized by the Board in this case is consistent with this latitude. Also, this court finds no lack of common standard utilized by the Board to which bidders could respond. *Waszen, 1 N.J.* at 284, 63 *A.*2d at 260. *See also*

---

[4] The court was not provided with a copy of this letter.

*Rosenblum v. Closter Board of Education,* 96 *N.J.A.R.*2d 540(EDU), 1996 WL 669175, *affirmed State Board,* 96 *N.J.A.R.*2d 743(EDU), 1996 WL 777106 (1996). The plaintiff's failure to participate or cite to any impropriety compromises its posture as a plaintiff.

Furthermore, applying the two part test announced in *Skakel v. North Bergen Tp.,* 37 *N.J.* 369, 380, 181 *A.*2d 473, 479 (1962), where the Supreme Court opined as to a modification of an offer in the context of the sale of public lands, pursuant to a comparable statute, the change here is not detrimental to the interests of the taxpayers and did not make the proposal more attractive to any potential bidder to the detriment of another.

This court therefore finds, as contemplated by *N.J.S.A.* 18A:18A–5c, Epic's accepted bid is lower than the plaintiff's rejected bid submitted on the second round, is the lowest price offered by any bidder and is apparently reasonable since it affords the Board an opportunity to have its school built within its revised budget.

This court concludes that plaintiff cannot demonstrate the process was compromised and the taxpayers will suffer. Failing this, and without standing, and the court not having found a substantial difference between the terms of the negotiated contract and the competitive bidding, plaintiff cannot demonstrate it is likely to prevail on the merits and this court declines to issue a preliminary injunction.