**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0519-23

SUBURBAN DISPOSAL, INC.,

    Plaintiff-Appellant,

v.

CITY OF PATERSON and FILCO
CARTING, CORP.,

    Defendants-Respondents,

and

E & B HAULING SERVICES, LLC,

    Defendant.

_____

              Argued March 6, 2024 – Decided April 1, 2024

              Before Judges Firko and Susswein.

              On appeal from the Superior Court of New Jersey, Law
              Division, Passaic County, Docket No. L-2447-23.

              Richard D. Trenk argued the cause for appellant (Trenk,
              Isabel, Siddiqi & Shahdanian, PC, attorneys; Richard
              D. Trenk, of counsel and on the briefs; Mary Y. Moon,
              on the briefs).

Mary Anne Groh argued the cause for respondent City of Paterson (Cleary, Giacobbe, Alfieri & Jacobs LLC, attorneys; Mary Anne Groh, of counsel and on the brief).

Greg Trif argued the cause for respondent Filco Carting Corp. (Trif & Modugno, LLC, attorneys; Greg Trif and Kyle Hudson Cassidy, of counsel and on the brief).

PER CURIAM

Plaintiff Suburban Disposal, Inc. appeals an October 19, 2023 Law Division order denying its application for preliminary and permanent injunctive relief barring defendant City of Paterson (the City) from executing its solid waste collection services contract with defendant Filco Carting, Corp. (Filco). Plaintiff contends the City improperly awarded the contract to Filco, disregarding "fatal defects" in Filco's bid. The trial court concluded the award of the contract to Filco was not arbitrary, capricious, or unreasonable. After carefully reviewing the record in light of the governing legal principles and arguments of the parties, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. In April 2022, the City issued bid specifications for a new contract—which was previously held by plaintiff. Bids were due June 2, 2022. Plaintiff

submitted a responsive bid, but the City rejected it because it "substantially exceeded the City's appropriations."  The City rejected all bids.

To ensure the collection of solid waste would proceed uninterrupted while the City rebid the contract, on June 9, 2022, the City extended the contract with plaintiff until December 31, 2022.

On September 1, 2022, the City issued a second set of bid specifications with bids due November 1, 2022.  The City rejected plaintiff's bid because it substantially exceeded the City's appropriations.  The City again rejected all bids.

On June 5, 2023, the City issued a third set of bid specifications for the new contract with bids due August 8, 2023.  This time, the bid specifications excluded bulk waste.

The bid specifications notice included a requirement to complete the Bidder Questionnaire issued by the Department of Environmental Protection and to provide a bid guarantee.  The notice specified the amount, form, and exceptions to the bid guarantee, stating:

> The City . . . requires that a bidder must submit with his bid a [b]id [g]uarantee in the form of a bid bond, certified check, or cashier's check in the amount of ten percent (10%) of the bid, along with Consent of Surety from a Bonding Company.  In no case shall the Bid Guarantee exceed $20,000.00.

A-0519-23

On June 14, 2023, the City entered into another extension agreement with plaintiff until September 30, 2023. On August 8, 2023, the City received bids from plaintiff, Filco, and E&B Hauling Services, LLC. Filco's bid was the lowest. From an annual perspective, Filco's bid was approximately $10 million lower than plaintiff's bid.

Filco's bid included a bid guarantee in the form of a bid bond. The heading/caption of Filco's bid bond listed a "Bond Amount" of "10% of the total amount of the bid proposal (not to exceed $20,000)." The text of Filco's bond stated, in relevant part:

> The Contractor and Surety are bound to the Owner in the amount set forth above, for the payment of which the Contractor and Surety bind themselves, . . . as provided herein. The conditions of this Bond are such that if the Owner accepts the bid of the Contractor within the time specified in the bid documents, or within such time period as may be agreed to by the Owner and Contractor, and the Contractor either
>
> (1) enters into a contract with the Owner in accordance with the terms of such bid, and gives such bond or bonds as may be specified in the bidding or Contract Documents, with a surety admitted in the jurisdiction of the Project and otherwise acceptable to the Owner, for the faithful performance of such Contract and for the prompt payment of labor and material furnished in the prosecution thereof; or

4

(2) pays to the Owner the difference, not to exceed the amount of this Bond, between the amount specified in said bid and such larger amount for which the Owner may in good faith contract with another party to perform the work covered by said bid, then this obligation shall be null and void, otherwise to remain in full force and effect.

The Surety hereby waives any notice of an agreement between the Owner and Contractor to extend the time in which the Owner may accept the bid. Waiver of notice by the Surety shall not apply to any extension exceeding sixty . . . days in the aggregate beyond the time for acceptance of bids specified in the bid documents, and the Owner and Contractor shall obtain the Surety's consent for an extension beyond sixty . . . days.

Filco's bond included a clause that provided:

When this Bond has been furnished to comply with a statutory or other legal requirement in the location of the Project, <u>any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted</u> herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that <u>this Bond shall be construed as a statutory bond</u> and not as a common law bond.

[(Emphasis added).]

Filco's bid also included a completed Bidder Questionnaire. Question two reads "[l]ist any other names under which the bidder, its partners or officers have conducted business in the past five years." Question six reads "[l]ist the

government Solid Waste and Service contract that the bidder has completed within the last five years. Give detailed answers to questions below relating to this subject." Filco responded "[n]one" to both questions two and six. On September 5, 2023, the City adopted a resolution awarding the contract to Filco as the lowest responsible bidder.

On September 7, 2023, plaintiff filed a verified complaint and an application for an order to show cause (OTSC) seeking injunctive relief. On September 13, 2023, the trial court heard oral argument and granted plaintiff's application. The OTSC with Temporary Restraints stated: "[t]he City, and all those acting in concert with it, are temporarily restrained and enjoined from executing and/or implementing and Contract with Filco or any other vendor pending a determination of [plaintiff's] claims as set forth in the verified complaint." The City and plaintiff then entered an "expiring contract" so "the City could avert a public safety crisis by continuing waste removal services for its constituents."

The trial court heard oral argument on October 11, 2023 and on October 19, 2023, denied plaintiff's application for preliminary injunctive relief. The court dismissed plaintiff's verified complaint, issuing a sixteen-page statement of reasons, and denied plaintiff's application for a stay pending appeal. We

granted leave for plaintiff to file an emergent application. On October 27, 2023, we stayed the trial court's order dismissing plaintiff's action in lieu of prerogative writs. On October 30, 2023, the Supreme Court denied the City's application seeking permission to file for emergent relief from our stay.

In November 2023, the City contacted Filco and plaintiff asking if they would be interested in submitting proposals to perform emergency solid waste removal services for the City beginning January 1, 2024.

On December 5, 2023, the City awarded the emergency contract to Filco. The emergency contract operates from January 1, 2024 to March 31, 2024. It can be extended on a month-to-month basis to meet the City's waste disposal needs.

Plaintiff sought permission from this court to file an emergent appeal, asserting the City violated the preliminary stay we had issued by awarding the emergency contract to Filco. We denied that application on December 13, 2023.

This appeal follows. Plaintiff contends Filco's bid guarantee was fatally defective, Filco's response to the Bidder Questionnaire was materially defective for failing to disclose its prior contracting history, and the City's challenge to plaintiff's standing is unsupported by the record.

II.

7

A-0519-23

We first address the City's threshold argument plaintiff does not have standing to challenge Filco's bid because plaintiff's bid substantially exceeded the appropriated funds available in 2023. Accordingly, the City contends, plaintiff would not be entitled to the contract even if Filco's bid were set aside. Plaintiff counters the City's standing argument "fails as a matter of law" because "[n]ow, in 2024, the 2023 budget is irrelevant."

We disagree with the notion the City's budget was irrelevant when the decision was made to reject plaintiff's bid. N.J.S.A. 40A:11-13.2(b) provides "[a] contracting unit may reject all bids . . . [when] [t]he lowest bid substantially exceeds the contracting unit's appropriation for the goods or services." That confirms a municipality's budget is a relevant consideration since the budget determines the amount appropriated for a contract. We add that a municipality cannot award a contract in excess of appropriated funds. See N.J.S.A. 2C:30-4 (making it a fourth-degree crime for a public official to "[i]ncur[] obligations in excess of the appropriation and limit of expenditure provided by law").

It is well-settled "[a] direct challenge aimed at the lack of qualification or responsibility of a successful contractor cannot be brought by one whose interest stems from his position as an unsuccessful bidder who would not be entitled to the contract even if the defendant were disqualified." Interstate Waste Removal

Co. v. Bd. of Comm'rs of City of Bordentown, 140 N.J. Super. 65, 71 (App. Div. 1976) (finding no standing for the third lowest bidder to "question the responsibility of the lowest bidder" if it would not be entitled to the contract). Here, the record shows plaintiff's bid exceeded the City's appropriated funds for 2023 and thus plaintiff lacks standing to challenge the City's decision to award the bid to Filco.

III.

In Interstate Waste Removal Co., we held the plaintiff had no standing to question the responsibility of the lowest bidder but added "[e]ven if it had the requisite standing, its argument is baseless on the merits."  140 N.J. Super. at 72.  We likewise proceed to address plaintiff's substantive contentions on their merits, as did the trial court.  We begin by acknowledging the legal principles governing the scope of our review, which is narrow.  See In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 590 (App. Div. 1995) ("The standard of review on the matter of whether a bid on a local public contract conforms to specifications . . . is whether the decision was arbitrary, unreasonable, or capricious.") (citing Palamar Constr. Inc. v. Twp. of Pennsauken, 196 N.J. Super. 241, 250 (App. Div. 1983); Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 534 (App. Div.

1983)). We will not interfere with the exercise of an agency's discretion in awarding a contract or rejecting a bidder "in the absence of bad faith, corruption, fraud or gross abuse of discretion." Com. Cleaning Corp. v. Sullivan, 47 N.J. 539, 549 (1966).

The Local Public Contracts Law (LPCL), N.J.S.A. 40A:11-1 to -60, was created to ensure a fair, public, and competitive bidding process for the taxpayer's benefit. "The statutes authorizing competitive bidding accomplish that purpose by promoting competition on an equal footing and guarding against 'favoritism, improvidence, extravagance and corruption.'" Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 313 (1994) (quoting Twp. of Hillside v. Sternin, 25 N.J. 317, 322 (1957)).

A public contract must be awarded "not simply to the lowest bidder, but rather to the lowest bidder that complies with the substantive and procedural requirements in the bid advertisements and specifications." Ibid. A contracting unit must award a contract "to the lowest responsible bidder," which is the bidder: "(a) whose response to a request for bids offers the lowest price and is responsive; and (b) who is responsible." N.J.A.C. 7:26H-6.7(d); N.J.S.A. 40A:11-2(27). Responsible "means able to complete the contract in accordance with its requirements" including requirements pertaining to experience, moral

integrity, credit, workforce, and financial capacity.  N.J.S.A. 40A:11-2(32).

Responsive "means conforming in all material respects to the terms and conditions, specifications, legal requirements, and other provisions of the request."  N.J.S.A. 40A:11-2(33).

With respect to bid bonds, the LPCL outlines five items that must be submitted with a bid: (1) "[a] guarantee to accompany the bid"; (2) "[a] certificate from a surety company"; (3) "[a] statement of corporate ownership"; (4) "[a] listing of subcontractors"; and (5) "[a] document provided by the contracting agent in the bid plans, specifications, or bid proposal documents for the bidder to acknowledge the bidder's receipt of any notice or revisions or addenda to the advertisement or bid documents."  N.J.S.A. 40A:11-23.2.  Failure to submit a mandatory item is a fatal defect rendering the bid unresponsive.  Ibid.

For the bid guarantee, N.J.S.A. 40A:11-21 provides: "[t]he guarantee shall be in the amount of 10% of the bid, but not in excess of $20,000.00, except as otherwise provided herein, and may be given, at the option of the bidder, by certified check, cashier's check or bid bond."  N.J.A.C. 7:26H-6.5(d)(3) specifically requires a bid proposal to include:

. . . .

3. A bid guarantee made payable to the contracting unit which shall certify that upon the award of the contract,

the successful bidder will execute the contract. The bid guarantee shall meet the requirements listed below:

i. The guarantee shall be in the amount of 10 percent of the bid, but not in excess of $20,000, and may be given at the option of the bidder, by bid bond, certified check or cashier's check; and

ii. The bid guarantee shall be signed by an authorized agent or representative of the guarantor and not by the individual or company submitting the bid proposal.

In the matter before us, plaintiff argues Filco submitted a defective bid guarantee in the form of a bid bond that "did not provide for the statutory amount as required under Section 3.2 of the Bid Specifications for 10% of the [c]ontract amount." We are satisfied the trial court correctly determined Filco's bid guarantee complied with the LPCL and implementing regulations. The trial court found Filco submitted a bid with a guarantee in the amount of 10% of the bid in the form of a bid bond. See N.J.A.C. 7:26H-6.5(d)(3)(i). It did not exceed $20,000.00. See ibid. Filco's bid bond clearly states: "10% of the total amount of the bid proposal (not to exceed $20,000.00)." Further, "[t]he Contractor and Surety are bound to the Owner in the amount set forth above [referencing 'Bond Amount']." It is also signed by the guarantor and was made payable to the City. See N.J.A.C. 7:26H-6.5(d)(3)(ii). We agree with the trial court that Filco's bid

bond contains all the mandatory requirements and its savings clause[1] effectively eliminated any language that might be construed to render the bond defective.

IV.

We turn next to plaintiff's contentions regarding Filco's answers to the Bidder Questionnaire. Plaintiff argues Filco failed to accurately respond to question two pertaining to the names under which the bidder, its partners, or officers have conducted business in the past five years. Specifically, plaintiff asserts by answering "none" to question two, Filco failed to disclose the name of the person who it claims co-founded Filco and served as the company's Executive Vice President, Adam Pasquale.

The trial court noted that Filco's owner and sole officer, Dominic Monopoli, certified Pasquale is only an employee of Filco—not an owner, partner, or officer. Finding Pasquale is not an officer of Filco, the trial court concluded "Filco's omission of Pasquale and his previous contracts from [q]uestion [two] does not constitute a deviation from the question." Given the

---

[1] As we have noted, Filco's bid bond states "any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein."

scope of our review, we have no basis upon which to second-guess that finding and decline to do so.

V.

We likewise reject plaintiff's contention Filco's response to question six constitutes a material defect. That question pertains to Filco's other solid waste contracts. Relying on a New York State database, plaintiff identified three New York-based contracts Filco completed.[2] But even accepting Filco's "none" answer to question six constitutes a defect, we must apply a two-prong test to determine whether it is a substantial defect and therefore non-waivable. River Vale Twp. v. R.J. Longo Const. Co., 127 N.J. Super. 207, 216 (Law. Div. 1974).

The first prong asks whether waiver would deprive the municipality of its assurances the awarded contract will be adhered to, performed, and guaranteed to meet the specifications. Ibid. Second, a reviewing court considers whether waiver of the bid defect would adversely affect competitive bidding by placing the bidder in a position of advantage over other bidders or otherwise negatively

---

[2] Filco and the City argue Filco did not disclose the New York contracts because it interpreted question six, in tandem with question five, not to require "information arising from out-of-state contracts." Question five states: "[l]ist all public entity contracts which the bidder or its partners is now performing or for which contracts have been signed, but work not begun. Give the name of the municipality or owner, the amount of the contract and the number of years the contract covers." Filco listed two New York State contracts in its answer.

14

affect competitive bidding.  Ibid.; see Nat'l Waste Recycling, Inc. v. Middlesex Cnty. Improvement Auth., 150 N.J. 209, 220 (1997) ("[B]idding statutes exist for the benefit of taxpayers, not bidders, and should be construed with sole reference to the public good.").

In analyzing the first prong, the trial court identified the "many indicators" of Filco's capability to perform the contract.  See River Vale, 127 N.J. Super. at 216.  Specifically, the trial court found Filco demonstrated its ability to perform the contract "in the form of a bid bond backed by a reputable surety, its disclosure of experience in New York in [q]uestion [fourteen], and other related experiences in [q]uestion [five]."[3]  Additionally, the City "determined Filco's qualifications based on the totality of the bid, not just the questionnaire."  The trial court also noted the City considered the report from its solid waste consultant.  Considering all relevant circumstances, we are satisfied the trial court correctly concluded the City's waiver of Filco's response to question six

---

[3]  In its answer to question fourteen—"[a]ddditional remarks if any"—Filco stated: "Filco Carting Corp. proudly services 5,000+ commercial, residential, industrial, and institutional customers daily, including all the Verizon and Con Edison locations, throughout the [five] boroughs of NYC, Westchester, Rockland, and Putnam counties.  Our experience[d] team of waste professionals use the most comprehensive high-level solutions for waste collection and recycling."

"would not deprive the municipality of the assurance that Filco was willing to enter the Contract and capable of the completion."

In analyzing River Vale's second prong, the trial court concluded "Filco's omission of prior experience would harm, not advantage it" in the competitive bidding process. See River Vale, 127 N.J. Super. at 216. The trial court added, "[u]nless the undisclosed prior contracts revealed harmful elements such as fraud or breach of contract, it is unlikely that an omission would advantage Filco." Furthermore, Filco provided its work history in response to other questions. Considering all relevant circumstances, we conclude the trial court did not err in finding Filco's response to question six was an immaterial defect waivable by the City.

In sum, we agree with the trial court that the City was not arbitrary, capricious, or unreasonable in awarding the contract to Filco. See In Re On-Line Games, 279 N.J. Super. at 590. To the extent we have not specifically addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

We vacate our stay of the trial court's order dismissing plaintiff's action in lieu of prerogative writs and affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                          A-0519-23